SHERMAN L. WHIPPLE *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION.

SAME *vs.* SAME.

Suffolk. March 16, 1928. — May 24, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Tax*, Income, Abatement. *Farm. Notice. Practice, Civil*, Exceptions. *Words*, "Business."

The commissioner of corporations and taxation sent notice of the disallowance of a complaint for abatement of an income tax by registered letter to the complainant at the legal address given upon his tax return; the letter was received at that address the next day and was receipted for by a person employed there as a domestic, who apparently was the only person in charge at the time and who placed it on the library table with other mail of the complainant; the complainant came to that residence on one or more nights during the next eleven days, but did not notice the commissioner's letter, which remained unopened until eighteen days after such receipt; and a complaint for abatement was filed in the Superior Court twenty-three days after such receipt. *Held*, that the complaint was filed too late to meet the requirements of G. L. c. 62, § 47,

as amended by St. 1923, c. 287, § 4, and it must be dismissed; the commissioner had complied with the requirements of the statute, and the mere fact that the notice was not brought to the complainant's attention in time to file the complaint within the statutory period did not give him an extension of time.

When the purpose of the statutes taxing income is considered, the word "business," as used in G. L. c. 62, § 6a, relating to the deduction of expenses, must be *held* to refer to an activity which occupies the time, attention and labor of men for the purposes of livelihood, profit or gain.

While the word "business," as used in G. L. c. 62, § 6a, would seem to exclude the right to deduct expenses of a farming enterprise run at a loss where the sole purpose is the pleasure, or the gratification of a whim of the owner, or even the more altruistic purpose of conferring a benefit on others, the mere fact that pleasure may be derived from the business of farming does not destroy its business aspect; and, if one of the purposes of the owner is to make the farm show a profit, considerations such as the hope entertained by him that he may be able to demonstrate to others the practicability of scientific farming or the fact that the profession of the law is his principal occupation do not take from the enterprise its character as a business.

An attorney at law living in Brookline, who had a large and extensive practice and was one of the leaders of his profession, maintained a summer estate of several hundred acres at Plymouth, a part of which he decided to operate as a farm, with the belief that he would be able, after bringing the land back to a state of fertility, to till the farm, as distinguished from residential property, without loss and perhaps at a profit. He derived pleasure from the operation of the farm, but his main purpose was not such pleasure but a desire to make the farm a self supporting enterprise and to raise cattle that would be a credit to his efforts. He desired and expected that, as the result of his labor and expenditures, he would be able to benefit that part of the public which was interested in the breeding and keeping of a better class of cattle, and he carried on the farm as a business proposition with the belief that ultimately it could be made to be at least self supporting. For eleven years preceding 1923, the farm showed an annual loss; in that year, the loss was over $27,000, and the loss continued in the three succeeding years. The owner sought under G. L. c. 62, § 6a, an abatement of an income tax assessed upon his income for 1923. The judge who heard the case found that the farm was run as a business proposition and that the losses were incurred in the business within the meaning of the statute. *Held*, that the finding by the judge was justified.

A ruling by the judge who heard the complaint above described, that a farm may be conducted as a trade or business, even though the owner is willing to carry it on without regard to whether the trade or business returns a profit or sustains a loss because of the pleasure derived from it, was error; but an exception thereto was overruled, because, the judge having found the facts to be otherwise than those stated in the ruling, it became immaterial.

A request by the respondent, at the hearing above described, for a ruling that "business" is a word of large signification and denotes that which

occupies the time, attention and labor of men for the purpose of a livelihood or profit, although it need not be the sole occupation or employment, was a substantially correct statement of the law, and should have been given without modification; but a modification stated by the judge was not harmful error because of facts found by him.

COMPLAINT, filed in the Superior Court on August 16, 1924, for the abatement of additional taxes levied on the complainant's income received in the years 1920, 1921, and 1922. Also, a

COMPLAINT, filed in the Superior Court on June 3, 1925, for the abatement of an additional tax levied on the complainant on his income received in 1923.

The respondent moved to dismiss the first case on the ground that the complainant had not appealed from the refusal of the respondent to grant his petition for abatement within the time fixed by law. The motion was heard by *Bishop*, J., and was allowed. The complainant alleged exceptions.

The second case was heard upon its merits by *Bishop*, J. Respecting the complainant, the judge found that the complainant was "of Brookline, an attorney at law who has been in active practice at the bar of this Commonwealth and at the Federal bar for more than forty years. He has a large and extensive practice, and is one of the leaders of his profession. His livelihood has been obtained by the practice of the law"; and that the farm in question was "in that part of Plymouth called Chiltonville . . . and known as "The Forges.'"

Material evidence and other facts found by the judge are stated in the opinion.

The complainant asked for the following rulings, among others:

"4. Upon all the evidence the petitioner is entitled to the abatement sought for the year 1924."

"8. There is evidence upon which it may be found that the petitioner is entitled to the abatement sought for the year 1924.

"9. The commissioner's regulation numbered 6037 is contrary to G. L. c. 62 and hence is not a valid ruling under § 38 of said chapter.

6037. A person cultivating or operating a farm, on a basis other than the recognized principles of commercial farming, the operation of which results in a continual loss from year to year, shall not be regarded as being engaged in the business of farming. In such cases, if the expenses incurred in connection with the farm are in excess of the receipts therefrom, the entire operation of the farm should be disregarded in making a return of business income; and the expenses incurred shall be regarded as personal expenses of the taxpayer, and shall not be claimed as a deduction from business income derived from other sources.

"10. It was not within the authority of the commissioner to make Regulation 6037.

"11. Commissioner's Regulation 6037 does not state the legal test of when a person cultivating or operating a farm is or is not engaged in the business of farming. ·

"12. Upon all the evidence the petitioner's farm losses were incurred in the petitioner's trade or business.

"13. There is evidence upon which it may be found that the petitioner's farm losses were incurred in the petitioner's trade or business.

"14. The mere fact that heavy losses are incurred in the initial stages of a large farming enterprise does not necessarily show that the farm is not conducted as a business enterprise and with the expectation that it will eventually become profitable.

"15. If the expenditures upon the farm exceed the receipts, giving rise to an inference that the farm is not conducted as a trade or business, that inference may be overcome by the testimony of the petitioner as to his intent.

"16. A farm may be conducted as a trade or business even though the person engaging in it is willing to do so without regard to its profitableness, because of the pleasure derived from it.

"17. Even though losses are incurred in the operation of a farm enterprise, the same may nevertheless be conducted as a business if the farm is operated in a businesslike manner and with a well defined and possibly reasonable hope that profits will eventually accrue."

"19. Upon all the evidence the petitioner did not receive notice of the commissioner's refusal to abate the taxes for the year 1924 until within ten days of the filing of his complaint in action No. 171430."

The judge, upon the foregoing requests, ruled as follows: "I give the petitioner's requests for rulings numbered 4, 8, 12, 13, 14, 15, 17 and 19. On his requests numbered 9, 10 and 11 I rule that in so far as the commissioner's regulation numbered 6037 makes the sole test of whether a person is engaged in the business of farming depend upon whether the person so engaged makes a continual loss or profit from year to year it is not a valid regulation. On his 16th request I rule that a farm may be conducted as a trade or business, even though the person engaging in it is willing to do so without regard to whether the trade or business returns a profit or sustains a loss, because of the pleasure derived from it."

The respondent asked for the following rulings:

"1. Unless the complainant satisfies the court that the complainant in conducting his farm was thereby engaged in a profession, employment, trade or business, he cannot recover.

"2. The conduct of the farm by the complainant was not a profession.

"3. The conduct of the farm by the complainant was not an employment.

"4. The conduct of the farm by the complainant was not a trade.

"5. The conduct of the farm by the complainant was not a business.

"6. I adopt as a definition of the word 'business,' as used in G. L. c. 62, §§ 5, 6, as amended, the following definition from Bouvier's law dictionary, 1926 edition, page 143: '"Business" that which occupies the time, attention and labor of men for the purpose of livelihood or profit, but is not necessary that it should be the sole occupation or employment.' — and as defined in *Goddard* v. *Chaffee*, 2 Allen, 395: '"Business" is a word of large signification, and denotes the employment or occupation in which a person is engaged to procure a living.'

"7. I rule on all the evidence presented to me and on the

facts as found by me that at the times involved in these two petitions the complainant was not engaged in the business of farming, and that the taxes assessed upon him were legally assessed.

"8. On all the evidence and on the facts as found by me, I rule that these petitions must be dismissed."

On the foregoing requests by the respondent, the judge ruled as follows: "I give the defendant's requests for rulings numbered 1, 2, 3 and 4. I decline to give the requests numbered 5, 7 and 8, and on the request numbered 6 I rule that the word 'business' as used in G. L. c. 62, §§ 5 and 6, as amended, is of large signification and defines an employment or occupation, and not necessarily the sole employment or occupation, in which a person is engaged for the purpose or with the hope or expectation of obtaining a livelihood or making a profit, or of conferring a benefit upon himself or others."

The respondent alleged exceptions.

Pertinent provisions of G. L. c. 62, §§ 5, 6, are as follows:

"Section 5. Income of the following classes received by any inhabitant of the Commonwealth during the preceding calendar year shall be taxed as follows: . . .

"(b) The excess over two thousand dollars of the income, as defined in section six, derived from professions, employments, trade or business shall be taxed at the rate of one and one half per cent per annum. . . .

"Section 6. Income taxable under subsection (b) of section five shall be the gross income from the profession, employment, trade or business, in the year for which the income is computed, . . . less the following deductions:

"(a) Expenses paid within the year in the profession, employment, trade or business, . . . ."

*F. D. Putnam,* Assistant Attorney General, for the respondent.

*E. O. Proctor,* for the complainant.

SANDERSON, J. In the first bill of exceptions the question presented is whether the complainant appealed from the refusal of the respondent to grant his petition for abatement within the time fixed by law. The respondent sent notice

of disallowance of the petitions for abatement by registered mail on July 23, 1924, postage prepaid, return receipt requested, addressed to the petitioner at his legal address given in his tax return. The letter was received at that address July 24, 1924; receipted for by a person employed there as a domestic, and apparently the only person in charge at the time, who placed it on the library table with other mail of the petitioner. He came to his residence on one or more nights between July 24, and August 3, but did not notice the letter and it remained unopened until August 11, 1924. The statute requires the commissioner to notify the petitioner of his decision by registered letter, and any person aggrieved by his refusal to abate the tax may appeal therefrom by filing a complaint in the Superior Court within ten days after the notice by the commissioner of his decision. G. L. c. 62, §§ 43, 47. St. 1923, c. 287, § 4. The commissioner gave the notice in the manner required by the statute, and the time within which the taxpayer might file a complaint for abatement was thereby fixed. The fact that the notice was not brought to the complainant's attention in time to file the complaint within the statutory period does not give him an extension of time. See *Farquhar* v. *New England Trust Co.* 261 Mass. 209, 215. Inasmuch as the case turns on the language of the section of the statute under which the complaint is brought, neither statutes with different requirements nor decisions based on such statutes are controlling. The decree dismissing the petition because not filed in time was right, and the complainant's exceptions must be overruled.

In the second case the complaint is for abatement of the tax assessed in 1924 on the complainant's income for the calendar year 1923.

The complainant, whose principal business is the practice of the law, lost $27,304.24 during that year in the operation of his farm and sought to deduct from his professional income that sum as a business loss. The commissioner refused to allow the deduction, as the result of which the tax paid was $440.51 more than it would have been if the deduction had been allowed. The judge of the Superior Court decided that

this loss was a business loss and that the complainant was entitled to the abatement sought.

The estate owned by the complainant, purchased for a summer residence, comprises several hundred acres with the buildings thereon. About the year 1912 he decided to operate a part of the property as a farm, with the belief that he would be able, after bringing the land back to a state of fertility, to till the farm, as distinguished from the residential property, without loss and perhaps at a profit. After experimenting with sheep and abandoning that experiment when found to be unprofitable, he turned his attention to the breeding of Guernsey cattle. Success in this business requires not only pure bred but registered stock, and he undertook to perfect a herd by securing animals of good strain at reasonable prices and then to build up the herd gradually. High prices are obtained for pure bred registered animals which produce a large amount of butter fat and at the same time are of proper form and color, and an owner cannot know whether his experiments in breeding will be successful until a substantial period of time has elapsed. The complainant's early efforts failed to produce the type of animal that would bring the higher prices, a result found to be attributable to the sires. The breeding plans were then changed and heifers are now produced which give promise of being cows of value. His present herd consists of eighty-five to ninety animals. The poultry business and the raising of trout are included as a part of the farm. The evidence was uncontradicted that the latter industry had produced a profit each year, but from the first the farm as a whole has shown an annual loss, which in 1926 and in each of the eight preceding years was in excess of $19,000. The receipts from the farm in 1923 were over $25,000; the largest single item of income being for milk. The complainant has spent a comparatively small part of his time at the farm, but he has at all times employed a superintendent with an agricultural college training, under whom the twenty or more employees work, and he confers with him on important matters of policy, the complainant's orders being final. He has improved the land, introduced pure bred stock, operated a

dairy and sold some of the animals. Plans have been adopted to reduce losses, eliminate waste and increase efficiency. Accurate farm accounts have been kept similar to those found in an ordinary business enterprise; these are forwarded to and supervised at the complainant's Boston office and the same care is taken with them as if the farm were making a profit. Supplies from the farm used by the complainant or members of his family are charged to him or them at the same prices paid by the general public and all surplus products are sold at regular market prices.

It is apparent from the testimony that efforts have been directed by the complainant toward the production of Guernsey cattle which will be merchantable at high prices. To this end he has devoted a large amount of time and study and has employed recognized business methods such as are usually put forth for the purpose of gain.

The judge ruled that there was evidence upon which it might be found that the losses were incurred in the complainant's trade or business, and that, upon all the evidence, they were so incurred. In support of these conclusions, in addition to the facts already referred to, the judge had the evidence of the complainant to the effect that, if he raised pure bred and high class stock for sale, he would benefit the section by introducing that sort of animal and would benefit himself because he would make a profit out of it; that this would be in line with what was done in England where he had made a special study of the farming industry; that his purpose was to raise the grade of stock that would bring the very high prices, and he believed that this would be a profitable way to do it. He also testified that unless the farm is made to pay under his present superintendent, his pure bred stock will be for sale. Evidence was introduced tending to prove that it is possible to make a financial success of the business of raising for sale Guernsey cattle of the best type.

The judge found that the complainant derives pleasure from the operation of the farm but that his main purpose is not such pleasure; it is, rather, a desire to make the farm a self-supporting enterprise and to raise cattle that will be a

credit to his efforts; and it is his desire and expectation that, as the result of his labor and expenditures, he will be able to benefit that part of the public which is interested in the breeding and keeping of a better class of cattle. He also found that the farm had been carried on as a business proposition with the belief on the part of the complainant that ultimately it could be made to be at least self-supporting. We understand this finding, when considered with the evidence upon which it must have been based and with the other findings, to mean that the complainant believed that the income would pay all expenses and also a fair return on the investment in the property devoted to farming; and to that extent, at least, that the finding carries with it the idea of gain or profit. A commercial enterprise in which labor is employed and capital invested could hardly be considered self-supporting unless it produced some return on the capital. The essential characteristics of a farming business were present.

By the terms of G. L. c. 62, §§ 5, 6, income from a business is taxable, and expenses paid within the year in the business may be deducted. The crucial question is whether the complainant in operating the farm as described in the evidence and in the findings of fact was engaged in business as that word is used in the income tax statute. If the loss was incurred in the complainant's business his right to deduct the amount from income is not disputed. Farming is a business within the ordinary meaning of that word. *Allen* v. *Commonwealth*, 188 Mass. 59, 61. The fact that a farm has been conducted several years at a loss is a material consideration but not the sole factor in determining whether it is a business enterprise. The inference from such losses — that the farm is not conducted as a trade or business — may be overcome by evidence as to the complainant's intent. "Business" is a word of large signification and is not susceptible of exact definition applicable to all cases. When the purpose of the statutes taxing income is considered, the word "business," as used in the section relating to the deduction of expenses, must be held to refer to an activity which occupies the time, attention and labor of men for the purpose of livelihood,

profit or gain. See *Goddard* v. *Chaffee*, 2 Allen, 395; *Allen* v. *Commonwealth, supra; Attorney General* v. *Boston & Albany Railroad*, 233 Mass. 460, 462; *Flint* v. *Stone Tracy Co.* 220 U. S. 107, 171; *Von Baumbach* v. *Sargent Land Co.* 242 U. S. 503, 515; *Smith* v. *Anderson*, 15 Ch. D. 247, 258. It would seem to exclude the right to deduct expenses of a farming enterprise run at a loss where the sole purpose is the pleasure, gratification of a whim of the owner, or even the more altruistic purpose of conferring a benefit on others. See *Flint* v. *Stone Tracy Co., supra; Von Baumbach* v. *Sargent Land Co., supra.* But the mere fact that pleasure may be derived from the business of farming does not destroy its business aspect. *Wilson* v. *Eisner,* 282 Fed. Rep. 38. If one of the purposes of the owner is to make the farm show a profit, considerations such as the hope entertained by him that he may be able to demonstrate to others the practicability of scientific farming or the fact that the profession of the law is his principal occupation do not take from the enterprise its character as a business.

The exception saved to the ruling concerning one of the regulations adopted by the respondent has not been argued and is treated as waived.

For reasons already stated, the judge erred in ruling that a farm may be conducted as a trade or business, even though the owner is willing to carry it on without regard to whether the trade or business returns a profit or sustains a loss because of the pleasure derived from it; but the exception to this ruling must be overruled because the findings of fact make it immaterial. The respondent's request that "business" is a word of large signification and denotes that which occupies the time, attention and labor of men for the purpose of a livelihood or profit, although it need not be the sole occupation or employment, was a substantially correct statement of the law, and in the ruling made this request was given in substance, except for a modification which included in the definition of "business" an occupation in which a person is engaged for the purpose or with the hope or expectation of conferring a benefit upon himself or others. For reasons which already sufficiently appear, this part of the definition

goes beyond the scope of the meaning of the word in the statute. But the exception must be overruled because, upon the facts found, the complainant expected to make a financial gain even though he may have expected other benefits to himself and others. The findings that the farm was run as a business proposition and that the losses were incurred in the business were justified by the evidence. In the conclusion that the complainant is entitled to the abatement sought we find no reversible error of law. The order in each case must be

*Exceptions overruled.*